UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| S.C., a minor, by his parents, C.C. and S.C., as next friends,<br><br>Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Case No.  5:14-cv-00980 HRL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Re:  Dkt. No. 11] |

Plaintiff S.C., by and through his parents, C.C. and S.C. (collectively, Parents), move for a preliminary injunction under the "stay put" provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j).  Defendant Palo Alto Unified School District (District) opposes the motion.  All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Upon consideration of the moving and responding papers, as well as the arguments of counsel, the court grants the motion.

## BACKGROUND

The underlying facts are largely undisputed.

S.C. is a 12-year old boy with Autism, eligible for special education services.  According to the complaint, he has deficits in fine and visual motor skills, sensory processing, behavior, and

speech and language, with a history of severe food allergies and pica behavior (i.e., mouthing or ingesting non-edible objects). (First Amended Complaint, Dkt. 8, ¶ 8).

S.C. resided in the Pajaro Valley Unified School District (Pajaro Valley) until early 2013 when he and his family moved to Palo Alto. He enrolled in the District in March 2013. Pajaro Valley and Palo Alto are located in separate Special Education Local Plan Areas (SELPAs).

Parents provided the District with a copy of S.C.'s last agreed-upon individualized education program (IEP) implemented by Pajaro Valley. That IEP provided a home-based program consisting of:

- •   15 hours per week of applied behavior analysis (ABA) instruction;
- •   2 hours per week of supervision of the home ABA program;
- •   2 hours per week of language and speech (LAS) therapy; and
- •   2 hours per week of occupational therapy (OT).

The parties met, but could not agree upon S.C.'s 30-day interim placement---namely, whether his special education services would be provided at his home or at school. The District offered the same type and amount of services as those in S.C.'s prior IEP, but in an isolated classroom that S.C. could access without contacting other students. Parents wanted a home-based program that replicated the IEP implemented in Pajaro Valley.

The District later convened a regular IEP meeting in May 2013 to discuss S.C.'s final placement. The District proposed placing him in school with specialized academic instruction in a special day class at Terman Middle School; 30 minutes of group LAS twice per week; 30 minutes of individual LAS once per week; 60 minutes of individual OT per week; 90 minutes of individual behavior intervention services 5 times per week; and round trip transportation. Parents rejected the District's offer and said that they intended to provide S.C. with a privately-funded home-based program and to seek reimbursement from the District.

Shortly after, S.C. filed an administrative complaint, claiming that the District failed to offer a free and appropriate public education for the school years 2012-13 and 2013-14. Among other things, he argued that the District's 30-day interim placement offer violated IDEA's "stay put" requirements. The Office of Administrative Hearings (OAH) ruled in the District's favor on

all issues.  S.C. then filed this lawsuit, seeking judicial review of the OAH's decision.

In the instant motion, S.C. seeks a "stay put" order requiring the District to provide the home-based instruction described in his last agreed-upon and implemented Pajaro Valley IEP, pending resolution of his dispute with the District.

## DISCUSSION

During the pendency of any proceedings under IDEA § 1415, and "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed."  20 U.S.C. § 1415(j).  This so-called "stay put" provision "requires the educational agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved."  Johnson ex rel Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1179 (9th Cir. 2002).  "For the purpose of § 1415(j)'s 'stay put' provision, the current educational placement is typically the placement described in the child's most recently implemented IEP."  Id. at 1180.  "Four kinds of proceedings are mentioned in § 1415:  (1) mediation; (2) due process hearings; (3) state administrative review; and (4) 'a civil action' begun by a complaint under the IDEA, 'which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.'"  Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1038 (9th Cir. 2009) (quoting 20 U.S.C. § 1415(e), (f), (g), (i)).  California has adopted a similar "stay put" provision. See Cal. Educ. Code § 56505(d) ("[D]uring the pendency of the hearing proceedings, including the actual state-level hearing, or judicial proceeding regarding a due process hearing, the pupil shall remain in his or her present placement . . . . unless the public agency and the parent or guardian agree otherwise.").

There is no apparent dispute as to the legal standard governing S.C.'s motion.  A stay put motion functions as an "automatic" preliminary injunction.  Joshua A., 559 F.3d at 1037.  "This is a far cry from saying that any request for relief under the 'stay put' provision must automatically be granted."  A.D. v. Dep't of Education, No. 12-00307 JMS-KSC, 2012 WL 5292865 at *8 (D.

United States District Court
Northern District of California

Hawai'i, Oct. 25, 2012) (citations omitted). Rather, the "automatic" nature of the motion simply "mean[s] that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." Joshua A., 559 F.3d at 1037.[1]

S.C. contends that the District's obligation is spelled out in M.S. ex rel G. v. Vashon Island School Dist., in which the Ninth Circuit held that:

> when a dispute arises under the IDEA involving a transfer student, and there is disagreement between the parent and student's new school district about the most appropriate educational placement, the new district will satisfy the IDEA if it implements the student's last agreed-upon IEP; ***but if it is not possible for the new district to implement in full the student's last agreed-upon IEP, the new district must adopt a plan that approximates the student's old IEP as closely as possible***. The plan thus adopted will serve the student until the dispute between parent and school district is resolved by agreement or by administrative hearing with due process.

337 F.3d 1115, 1134 (9th Cir. 2003) (emphasis added). Under this holding, S.C. argues that the District must replicate the services he received under the Pajaro Valley IEP, including that the services be provided in his home and not in a school classroom, unless doing so would be impossible. The District maintains that, while replicating S.C.'s Pajaro Valley IEP is not impossible, it has no obligation to do so. Rather, in the District's view, S.C.'s transfer from one educational jurisdiction to another means that he cannot rely on his prior IEP for "stay put" and that the District is only obliged to provide "comparable" services, whether or not replication of the Pajaro Valley IEP is feasible.

This court is unpersuaded by the District's arguments.

To begin, defendant has not convincingly demonstrated that the "to the extent possible" language in Vashon Island has been superceded by statute. Pointing out that Vashon Island's holding was based on a letter from the Office of Special Education Programs (OSEP), the District says that the OSEP letter was meant to provide guidance to school districts on their obligations to

---

[1] By contrast, where a party seeks to enjoin an existing "stay put" order, the traditional preliminary injunction analysis applies. Johnson, 287 F.3d at 1180. Additionally, "[t]he automatic injunction standard . . . only applies when the court considers a stay put motion; it does not apply to a preliminary injunction motion that affects a stay put invocation, but is not itself the invocation." A.D. ex rel L.D., 2012 WL 5292865 at *7 (citation omitted).

transfer students in the absence of controlling statutory law. The District goes on to argue that there now is a controlling statute. According to defendant, amendments to IDEA provisions concerning transfer students, effective July 1, 2005, require only that school districts provide services that are "comparable," not identical, to the student's prior IEP. For example, with respect to a student's transfer between school districts within the same state, IDEA provides:

> In the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in the same State, the local educational agency shall provide such child with a free appropriate public education, including services *comparable* to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law.

20 U.S.C. § 1414(d)(2)(C)(i)(I) (emphasis added); see also 34 C.F.R. § 300.323(e). California has a similar law, requiring a school district to provide an interim educational placement with "services *comparable* to those described in the previously approved individualized education program, in consultation with the parents," for up to 30 days when the student transfers between districts that are not operating under the same SELPA. Cal. Educ. Code § 56325(a)(1) (emphasis added). The District contends that if "stay put" truly applied to transfer students, then it would make no sense for these statutes to have been enacted.

However, the District has not cited, nor has this court found, any authority for the proposition that IDEA § 1414(d)(2)(C)(i)(I) supercedes Vashon Island's "to the extent possible" language.[2] Moreover, the federal and state statutes and regulations cited by the District, on their face, concern a school district's obligations when a student transfers from one district to another. They do not address what a school district is obliged to do when a student's placement is disputed and proceedings under IDEA § 1415 are pending. That is the situation addressed in Vashon Island.

---

[2] A cite check reveals that a number of cases recognize that Vashon Island has been "superceded by statute." But, those cases (which cite to Vashon Island for other reasons) note that the opinion has been "superseded on other grounds by 20 U.S.C. § 1414(d)(1)(B)"---a completely different section of IDEA than the one cited by the District.

1   The District nevertheless points out that, even in Vashon Island, the Ninth Circuit
2   acknowledged that a school district's "stay put" obligation "is not absolute" and has "held that
3   when a student falls under the responsibility of a different educational agency---for example, when
4   a student becomes old enough to receive services from a school district rather than a preschool
5   provider---the new agency need not provide a placement identical to that provided by the old
6   agency." 337 F.3d at 1133.  Additionally, "[a]lthough the 'stay-put' provision is meant to
7   preserve the status quo, [the Ninth Circuit] recognize[s] that when a student transfers educational
8   jurisdictions, the status quo no longer exists." Id. (citing Johnson, 287 F.3d at 1181-82) (emphasis
9   added).  The District argues that this language means that the "stay put" remedy does not apply
10  because the status quo was eviscerated by S.C.'s transfer, but this court does not believe Vashon
11  Island can be so construed.  As discussed above, Vashon Island went on to hold that in the event
12  of a transfer, the new district must implement the last agreed-upon IEP; and, if implementation of
13  that IEP "in full" is "not possible," then "the new district must adopt a plan that approximates the
14  student's old IEP as closely as possible." 337 F.3d at 1134.  At least one court has continued to
15  cite to Vashon Island's "to the extent possible" standard.  See, e.g., S.A. ex rel. L.A. v. Exeter
16  Union School Dist., No. CV F10-347 LJO SMS, 2010 WL 4942539 at *17 (E.D. Cal., Nov. 24,
17  2010) (stating that when a student transfers to a different district, "'[t]o the extent implementation
18  of the old IEP is impossible, a [district] must provide services that approximate, as closely as
19  possible, the old IEP.'") (quoting Vashon Island, 337 F.3d at 1132); Joshua A. ex rel Jorge A. v.
20  Rocklin Unified School Dist., No. CV 07-01057 LEW(KJMx), 2007 WL 2389868 at *3 (E.D.
21  Cal., Aug. 20, 2007) ("Defendant is accurate that Plaintiff is not inherently entitled to identical
22  services where those services are no longer possible or practicable.") (citing Vashon Island, 337
23  F.3d at 1133).

## ORDER

25  Accordingly, plaintiff's motion for preliminary injunction is granted.  The District shall
26  provide the following services during the pendency of all proceedings under 20 U.S.C. § 1415(j):
27  •   15 hours per week of applied behavior analysis (ABA) instruction;
28  •   2 hours per week of supervision of the home ABA program;

1. • 2 hours per week of language and speech therapy; and
2. • 2 hours per week of occupational therapy.

**SO ORDERED**.

Dated: June 2, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1  5:14-cv-00980-HRL Notice has been electronically mailed to:

2  Brian Richard Sciacca     brian@ieplaw.com

3  Kimberly Anne Smith     ksmith@fagenfriedman.com, khriczo@fagenfriedman.com

4  Melanie Diane Larzul Seymour     mseymour@fagenfriedman.com, jforrette@f3law.com, plarson@f3law.com